WILLIAM TAYLOR, et al., plaintiffs in error, vs. MOSES H· BALDWIN, et al, defendants in error.

Crabb sold to Baldwin, a lot of land, and gave Baldwin his bond, conditioned to be void, if he should make to Balawin, a good title to the lot, when Baldwin paid to him $150, which payment was to be made by the 25th of December. Baldwin gave Crabb his note for the $150, payable at the time aforesaid, and went into possession of the land. At the end of some three years, ejectment was brought against Baldwin's tenant or assignee, by Crabb, or his assignee; and then, Baldwin, and his assignee, filed a bill against Crabb, and his assignee, for the specific performance of the contract of purchase, and tendered the purchase money, and the bond for titles. Crabb never offered to return the note for the purchase money, until he answered the bill; nor did he otherwise manifest any dissatisfaction at the course of Baldwin until the ejectment.

*Held*, That time was not of the essence of the contract of purchase; and, that Baldwin, though failing to pay the purchase money on the 25th of December, had still a reasonable time, within which to pay it, after the commencement of the ejectment.

In Equity, in Randolph Superior Court. Tried before Judge KIDDOO, at November Term, 1858.

This bill was filed by Moses H. Baldwin, and Sidney C. DuBose, against Benjamin Crabb and William Taylor, to

enjoin an action of ejectment, for specific performance, relief, &c.

The bill states, that on the 9th October, 1847, Baldwin purchased from Crabb, lot of land No. 142, in the 5th district of said county, giving to Crabb his note for the purchase money, one hundred and fifty dollars, due 25th December thereafter, and received from Crabb his bond for titles, to be executed and delivered upon the payment of said note; that Baldwin went into possession of the lot, and made improvements, and continued in the possession thereof, until December, 1850, when he sold the lot to complainant, DuBose, who went into possession, and has remained in possession ever since; that while DuBose was thus in possession, William Taylor, with notice 'of complainant's occupancy and claim, purchased it from Crabb, and has brought his action of ejectment for the recovery of the same.

The bill further states, that in March, 1851, Baldwin tendered the purchase money, with interest, and demanded titles from Crabb, which he refused. The bill prays that the action of ejectment be enjoined; that Crabb's deed to Taylor, be declared null and void; and that Crabb be decreed to make good and valid titles to complainant, upon the receipt or tender of the purchase money and interest.

The answer of the defendants admits the statement of the bill, as to the purchase of the land, by Baldwin, from Crabb, in 1847. But the defendants insist that said sale was conditional, and that in the event that the purchase money was not paid by the 25th December, 1847, then said sale was to become void, and of no effect; that said purchase money was not paid when it became due, and complainant (Baldwin) was a stranger to Crabb, living in a distant county, (Henry) and of whom, or whose solvency, he knew but little; denies that Baldwin went into possession; admits that Taylor bought the land from Crabb in December, 1850, without notice of any superior claim or title, by complainants, or either of them; that DuBose never had posses-

sion of said land, and there was no pretence that he had bought the same, until after Taylor bought from Crabb ; and that Baldwin had never cultivated any part of the lot, but had built a negro house, or some other small building on said lot, near to where he lived, on an adjoining lot; admits that Baldwin did make a tender, and demand titles, but it was long after the land had been sold to Taylor, and after the ejectment suit was commenced.

By consent, the action of ejectment, and the equity cause, were tried together. The bill and answer were read. Complainants introduced a witness, who proved that sometime after Baldwin's purchase, he built some negro cabins a few yards over the line, on this lot No. 142; any person who knew the lines, could have discovered that the cabins were on the lot. Taylor lived on a lot cornering with lot No. 142, and if he knew the lines, would; in all probability have known that the cabins were on it. Heard Crabb say he had made Baldwin a limited bond ; that if the money was paid at the time it was due, 25th December, 1847, he was to have the land, and if not punctually paid, it was to be no trade, and the land was to belong to him (Crabb). DuBose was in possession when the action of ejectment was commenced ; there had been as much as forty acres cleared, and was worth two dollars and fifty cents per acre, for rent.

1st. Defendants offered in evidence the original plat and grant, from the State to Robert H. Elliott; dated 16th December, 1837, for said lot.

2d. A deed from Elliott to Benjamin Crabb, to said lot, dated 27th April, 1846.

3d. A deed from Crabb, to William Taylor, dated 8th December, 1850.

1st. The Court charged the jury, that if they believed that Taylor was an innocent purchaser, without notice of Baldwin's purchase, or possession, then he is entitled to recover the premises in dispute, and rent therefor as proved.

2d. That if, from the answers, and other evidence, they

believed that the copy bond attached, as an exhibit to the bill, is a true copy of the bond from Crabb to Baldwin, and that Taylor, at the time he purchased, had notice of Baldwin's former purchase and possession, and that he had tendered the purchase money, with interest, within a reasonable time then they ought to find, that upon his payment of the purchase money and interest, that Crabb execute and deliver to him a deed for the premises, and that Taylor's action of ejectment be perpetually enjoined. The Court being of opinion that the terms of the bond for titles, did not annul the contract, if the money was not paid on the day it was due, but that the vendee had a reasonable time afterwards, within which to pay, and call for titles. To which charge defendants excepted.

The jury found for the complainants—enjoining perpetually the action of ejectment, and that upon the payment of the purchase money, with interest, to Crabb, that he execute titles to Baldwin.

Whereupon, defendants tender their bill of exceptions, assigning as error, the charge of the Court, and the verdict aforesaid.

Hood & Robinson, for plaintiff in error.

Douglass & Douglass; and E. H. Beall, *contra.*

*By the Court.*—Benning J. delivering the opinion.

The question is, whether, the second charge of the Court was right? That charge amounts to this, that time was not of the essence of the contract; that, although, Baldwin, did not offer to pay the purchase money on the day it fell due, yet, the contract of purchase, still subsisted, and he had still a reasonable time within which, to pay that money. Was this charge right?

The general principle, no doubt, is, that, in equity, time is not of the essence of the contract. That this is true of

mortgages, and bonds with penalties, is familiar doctrine. Indeed, it is true, at law, of bonds with penalties; and, we may say, also of mortgages, in this State, for in this State, we may, if not must, foreclose mortgages at law.

And I think it doubtful myself, whether, the conclusion to be drawn from the English authorities, as they at present stand is not, that time is in no case of the essence of the contract. I think it certain, that they, at least, do not go further than this,—that, it is possible so to frame a contract, that time shall be of its essence.

Conceding, however, that a contract may be so framed, that time shall be of its essence, the question is, whether the contract in the present case, was so framed.

What is the test? This, I suppose, we may say, that the words shall be such, that they clearly show the *intention* to be, that time shall be of the essence of the contract. 2 *White & Tudor., Lead. Cas.* 19; and what words will be sufficient for this? Words, at least, as strong as these, "that the agreement shall be void, unless the purchase be completed on a certain day." *2d Ibid.*

Are there any such words in this agreement? There are not. This agreement is evidenced by a bond for titles, and the condition of that bond, is as follows: "The condition of this obligation, is this, that if the said Benjamin Crabb shall make, or cause to be made, to the said Baldwin," "a good and sufficient title" "to lot No. one hundred and forty-two," "when the said Moses F. Baldwin shall have paid, to the said Crabb, the sum of one hundred and fifty dollars, which payment is to be made by the twenty-fifth of December, that then the above bond or obligation, shall be null and void, otherwise to remain in full force."

There is nothing in these words, importing that the contract of purchase was to be void, if the purchase money was not paid on the appointed 25th of December. They merely say, that the vendor's *bond* shall be void, when *he* makes a title; and, that he must make a title, when the purchase money is

paid, and, that the purchase money is to be paid on the 25th of December. They do not go further, and say, that if the purchase money is not paid on that day, the contract of purchase is to be void.

We think, then, that these words, taken by themselves, are not sufficient, to show it to have been the intention, that the contract of purchase was to be void, unless the purchase money was paid on the 25th day of December.

And this view from the words, is confirmed by the conduct of the parties. Baldwin, the purchaser, went into possession at the time of the purchase, and he, and his assignee, DuBose, have remained in possession ever since.

In this conduct, Crabb and his assignee, Taylor, acquiesced, until the bringing of the ejectment, which was brought only a short time before the commencement of the bill. They did not complain; they did not demand re-possession of the land, or, of the bond for titles; they did not offer to return the note given for the purchase money, until they came to answer the bill. All this goes to show, that the parties, themselves, interpreted their contract, as not meaning, that time was to be of its essence.

We think, then, that the Court was right, in the part of its charge, in which, it told the jury, that time was not of the essence of the contract.

Was the Court also right in the other part of its charge, in which it told the jury, that Baldwin was entitled to a reasonable time within which, to pay the purchase money? We think so. This part of the charge, was but a corollary from the first part. So, if that was right, this was, of necessity, right. This, indeed, was, I believe, not disputed.

The first charge was in favor of the plaintiff in error. The two charges are all the decisions stated in the bill of exceptions.

There was no motion for a new trial. Therefore the action of the jury cannot come before this Court, consequent-

ly, there can be, for this Court, no further question in this case.

Judgment affirmed.

McDONALD J. did not preside in this case, being absent on account of illness.